JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Nikki Driy, individually and on behalf of her minor son, Cameron Wright

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff: St. Louis County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: St. Louis County
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Antranik "Andy" Boyadzhyan
Lento Law Group

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [ ] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [x] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [x] 1 | [x] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | 625 Drug Related Seizure of Property 21 USC 881 | 422 Appeal 28 USC 158 | 375 False Claims Act |
| 120 Marine | 310 Airplane | 365 Personal Injury - Product Liability | 690 Other | 423 Withdrawal 28 USC 157 | 376 Qui Tam (31 USC 3729(a)) |
| 130 Miller Act | 315 Airplane Product Liability | 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | **INTELLECTUAL PROPERTY RIGHTS** | 400 State Reapportionment |
| 140 Negotiable Instrument | 320 Assault, Libel & Slander | | | 820 Copyrights | 410 Antitrust |
| 150 Recovery of Overpayment & Enforcement of Judgment | 330 Federal Employers' Liability | | | 830 Patent | 430 Banks and Banking |
| 151 Medicare Act | 340 Marine | 368 Asbestos Personal Injury Product Liability | | 835 Patent - Abbreviated New Drug Application | 450 Commerce |
| 152 Recovery of Defaulted Student Loans (Excludes Veterans) | 345 Marine Product Liability | | | 840 Trademark | 460 Deportation |
| | | | | 880 Defend Trade Secrets Act of 2016 | 470 Racketeer Influenced and Corrupt Organizations |
| 153 Recovery of Overpayment of Veteran's Benefits | 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | | 480 Consumer Credit (15 USC 1681 or 1692) |
| 160 Stockholders' Suits | 355 Motor Vehicle Product Liability | 370 Other Fraud | 710 Fair Labor Standards Act | | 485 Telephone Consumer Protection Act |
| 190 Other Contract | 360 Other Personal Injury | 371 Truth in Lending | 720 Labor/Management Relations | **SOCIAL SECURITY** | 490 Cable/Sat TV |
| 195 Contract Product Liability | 362 Personal Injury - Medical Malpractice | 380 Other Personal Property Damage | 740 Railway Labor Act | 861 HIA (1395ff) | 850 Securities/Commodities/ Exchange |
| 196 Franchise | | 385 Property Damage Product Liability | 751 Family and Medical Leave Act | 862 Black Lung (923) | 890 Other Statutory Actions |
| | | | 790 Other Labor Litigation | 863 DIWC/DIWW (405(g)) | 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | 791 Employee Retirement Income Security Act | 864 SSID Title XVI | 893 Environmental Matters |
| 210 Land Condemnation | [x] 440 Other Civil Rights | **Habeas Corpus:** | | 865 RSI (405(g)) | 895 Freedom of Information Act |
| 220 Foreclosure | 441 Voting | 463 Alien Detainee | | **FEDERAL TAX SUITS** | 896 Arbitration |
| 230 Rent Lease & Ejectment | 442 Employment | 510 Motions to Vacate Sentence | | 870 Taxes (U.S. Plaintiff or Defendant) | 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| 240 Torts to Land | 443 Housing/ Accommodations | 530 General | | 871 IRS—Third Party 26 USC 7609 | |
| 245 Tort Product Liability | 445 Amer. w/Disabilities - Employment | 535 Death Penalty | **IMMIGRATION** | | 950 Constitutionality of State Statutes |
| 290 All Other Real Property | 446 Amer. w/Disabilities - Other | **Other:** 540 Mandamus & Other | 462 Naturalization Application | | |
| | 448 Education | 550 Civil Rights | 465 Other Immigration Actions | | |
| | | 555 Prison Condition | | | |
| | | 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 USC Sec. 1983 Title VI
Brief description of cause:
Fourteenth Amendment

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes  [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*
JUDGE _____  DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Reverse (Rev. 04/21)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

I.(a) **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

II. **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

III. **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

IV. **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

V. **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

VI. **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

VII. **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

VIII. **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Nikki Driy, individually and on behalf of her minor son, Cameron Wright,<br>      Plaintiff,<br><br>v.<br><br>Pattonville High School,<br>Pattonville School District,<br>Teisha Ashford,<br>Barry Nelson, Dr. Tim Pecoraro,<br>Jon Fitzgerald, Jeff Grimshaw,<br>Andre Redden, Mary Kay Campbell,<br>Lisa Kickbusch, Dr. Brian J. Gray,<br>Jan Schweiss, and Rená Simmons,<br>      Defendants. | Case No. _____ |

## COMPLAINT

### INTRODUCTION

1. Plaintiff, Nikki Driy, on behalf of her minor son, Cameron Wright, brings this action to address the egregious violations of Cameron's constitutional and statutory rights under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, Title VI of the Civil Rights Act of 1964, and Title IX of the Education Amendments of 1972.

2. Defendants subjected Cameron to baseless accusations, racially and gender-motivated discriminatory treatment, and disciplinary actions without affording him the due process guaranteed under the Constitution.

3. As a result of Defendants' conduct, Cameron endured unwarranted suspension, criminal charges, social ostracism, emotional trauma, academic setbacks, and reputational harm. These events jeopardized his educational future and inflicted long-term psychological and emotional harm.

4. Plaintiff seeks declaratory relief, injunctive relief, and damages to compensate Cameron for the harm caused and to deter similar unconstitutional and discriminatory actions against other students.

**PARTIES**

5. Plaintiff Nikki Driy is a resident of Bridgeton, Missouri, and the mother of Cameron Wright, a minor and former student at Pattonville High School.
6. Defendant **Pattonville High School** is a public high school within the Pattonville School District, located in St. Louis County, Missouri.
7. Defendant **Pattonville School District** is a public school district responsible for establishing and enforcing policies and procedures affecting Pattonville High School and its students.
8. Defendant **Teisha Ashford** is the Principal of Pattonville High School, responsible for administration, including disciplinary actions affecting students.
9. Defendant **Barry Nelson** is the Superintendent of Schools in the Pattonville School District, responsible for approving or extending disciplinary actions.
10. Defendant **Dr. Tim Pecoraro** is an administrator within Pattonville School District, holding authority over policies impacting student conduct and discipline.
11. Defendant **Jon Fitzgerald** is an Assistant Principal at Pattonville High School, tasked with administrative duties, including oversight of specific programs and departments.
12. Defendant **Jeff Grimshaw** is an Associate Principal responsible for senior students, including the counseling and career guidance departments.
13. Defendant **Andre Redden** is an Assistant Principal at Pattonville High School with responsibilities for student discipline and certain departments.
14. Defendant **Mary Kay Campbell** is the President of the Pattonville Board of Education, responsible for governance and oversight of district-wide policies.
15. Defendants **Lisa Kickbusch, Dr. Brian J. Gray, Jan Schweiss, and Rená Simmons** are members of the Pattonville Board of Education, tasked with enforcing policies impacting student rights and protections.

**JURISDICTION AND VENUE**

16. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, as it involves federal questions regarding violations of Cameron's civil rights under 42 U.S.C. § 1983 and federal statutes Title VI and Title IX.

17. Venue is proper in this District under 28 U.S.C. § 1391 because the events giving rise to this action occurred within the Eastern District of Missouri.

**FACTUAL BACKGROUND**

18. Cameron Wright is a white, male, 10th-grade student at Pattonville High School, located in St. Louis County, Missouri. At the time of the events described herein, Cameron resided at 11729 Parish Dr., Bridgeton, Missouri, 63044, and was identified by student ID number 59626. He was a well-regarded student who was on track to graduate in 2025 and had no history of disciplinary issues.

19. On March 6, 2023, Pattonville High School administrators received reports of threatening graffiti messages discovered in the boys' restrooms on campus. Specifically, the messages were found in the large stall of the boys' restroom on the first floor of the H-wing and, later that day, in the boys' restroom of the D-wing. The graffiti contained similar content, including language suggesting threats to school safety, which was understandably alarming to school personnel.

20. In response, the school administration initiated an investigation into the matter. Surveillance footage from March 6, 2023, was reviewed in an effort to identify a suspect. However, the administration was unable to find any individual who had entered both restrooms where the graffiti had been discovered. Despite this inability to pinpoint any individual responsible, administrators unreasonably concluded, without evidence, that only a single person could have been responsible for both instances of graffiti. This assumption dismissed the possibility that multiple individuals could have participated in or been involved in the creation of the threatening messages.

21. Administrators then expanded their surveillance review to include footage from March 3, 2023, a Friday. This earlier footage revealed that Cameron Wright had entered both restrooms where the graffiti was later discovered. Importantly, Cameron's use of these

restrooms was entirely consistent with his classroom locations, as both restrooms were adjacent to his scheduled classes and were reasonably accessible to him for convenience. No evidence was found on this footage or otherwise linking Cameron to the graffiti itself.

22. Despite the lack of any direct or circumstantial evidence implicating Cameron, the school officials prematurely and arbitrarily concluded that Cameron was responsible for the graffiti. Based on nothing more than his presence in the restrooms captured on older surveillance footage, Cameron was accused of committing a Level III offense under the school's code of conduct. Specifically, Cameron was accused of violating Section 13, which pertains to making threats to bring weapons or cause harm to others. These accusations, made without any factual basis, constituted a grave violation of Cameron's due process rights and were procedurally deficient.

23. On March 8, 2023, Cameron was suspended from Pattonville High School for 10 days. This suspension was imposed without providing Cameron with an opportunity to meaningfully refute the allegations against him or present any evidence in his defense. Cameron and his family were not afforded a hearing or any other procedural safeguards before the suspension was implemented.

24. On March 9, 2023, Defendant Principal Teisha Ashford reviewed information provided by Assistant Principal Jared Beucke and escalated the disciplinary actions against Cameron. Principal Ashford recommended extending Cameron's suspension to 180 days or, alternatively, that he be expelled from school. Assistant Principal Beucke's report relied, in part, on handwriting samples provided by Cameron's history teacher, Mr. Gross. These handwriting samples were speculative, lacked scientific basis, and failed to provide conclusive evidence of Cameron's involvement in the graffiti. Nonetheless, these speculative materials were used to support the severe disciplinary recommendations against Cameron.

25. On March 10, 2023, Defendant Superintendent Barry Nelson approved Principal Ashford's recommendation to extend Cameron's suspension to 180 days. Superintendent Nelson made this decision without conducting an independent review of the evidence or affording Cameron or his family the opportunity to contest the allegations in a meaningful manner. Cameron's procedural and substantive due process rights were disregarded throughout this process.

26. Adding to the harm inflicted by the school, local law enforcement became involved based on the school's unfounded accusations. Cameron was arrested, handcuffed, and charged with felony terrorism. These charges were initiated without credible evidence to support the allegations against him. Cameron was subjected to the trauma of being processed at a police station, including fingerprinting and interrogation, causing significant emotional distress and irreparable harm to his reputation.

27. To defend against these baseless charges, Cameron's family was forced to hire legal counsel and a handwriting specialist, incurring significant financial costs. Through the intervention of their legal team, the charges against Cameron were ultimately dismissed, as the evidence was insufficient to support the accusations. This protracted legal process caused severe emotional distress to Cameron and his family, further compounding the harm caused by Defendants' actions.

28. Following these events, Cameron was ostracized within his school community. He was treated as a threat by his peers and staff and was excluded from the supportive environment he had previously enjoyed at Pattonville High School. Despite the lack of evidence against him, Cameron was not provided with any academic, social, or emotional support by school officials.

29. Defendants failed to take reasonable steps to ensure that Cameron's school environment remained safe and supportive. Instead, Defendants' actions created an atmosphere of hostility and isolation, leaving Cameron feeling unsafe, unwelcome, and unsupported in his educational environment.

30. To this day, the false accusations and disciplinary actions remain on Cameron's academic record, creating a permanent stain that negatively impacts his ability to pursue higher education and future career opportunities. The harm caused by these actions is ongoing and far-reaching.

31. Defendants' conduct represents a gross violation of Cameron's constitutional and statutory rights, including his rights to due process, equal protection, and freedom from discrimination. These actions were taken without regard for Cameron's well-being or the long-term consequences of their baseless accusations and unsupported disciplinary.

## CLAIMS FOR RELIEF

### Count I: Violation of Due Process Rights under the Fourteenth Amendment (42 U.S.C. § 1983)

32. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.
33. Cameron Wright, as a student enrolled in Pattonville High School, had a constitutionally protected property interest in his education under the Due Process Clause of the Fourteenth Amendment. Cameron also had a liberty interest in his reputation and his ability to pursue educational opportunities free from unfounded accusations.
34. Defendants, acting under color of state law, deprived Cameron of these constitutionally protected interests by subjecting him to unwarranted and severe disciplinary actions, including suspension, an extended suspension recommendation of 180 days, and the initiation of expulsion proceedings, without affording him the procedural protections guaranteed by the Fourteenth Amendment.
35. Defendants failed to provide Cameron with adequate notice of the specific allegations against him. The notice provided to Cameron and his family was vague and based on speculative evidence, including inconclusive handwriting analysis and video footage that failed to directly implicate him.
36. Defendants further violated Cameron's due process rights by failing to conduct a fair and impartial investigation into the allegations. The school administration relied solely on circumstantial evidence that lacked credibility, including surveillance footage from days prior to the discovery of the graffiti and inconclusive handwriting comparisons, to accuse Cameron of wrongdoing.
37. Defendants did not provide Cameron with an opportunity to meaningfully contest the allegations against him or present evidence in his defense. The decision to suspend Cameron for 10 days, recommend an additional 180-day suspension, and initiate expulsion proceedings was made without a fair hearing or any opportunity for Cameron to challenge the basis of the accusations.
38. Defendant Superintendent Barry Nelson's approval of the extended suspension recommendation further deprived Cameron of due process, as this decision was made

without conducting an independent review of the evidence or allowing Cameron to present his side of the story.

39. The actions of the Defendants were arbitrary and capricious, demonstrating a deliberate indifference to Cameron's constitutional rights. Defendants acted on assumptions and unsubstantiated allegations rather than adhering to the established principles of fairness and due process.

40. As a direct and proximate result of Defendants' actions, Cameron suffered significant harm, including:

    a. The loss of educational opportunities due to his suspension and exclusion from the school environment.

    b. Emotional distress caused by the stigma of being falsely accused and treated as a threat to school safety.

    c. Reputational harm resulting from the disciplinary record and the dissemination of unfounded allegations against him.

41. Defendants' actions violated Cameron's rights under the Fourteenth Amendment, and their conduct was the moving force behind the injuries he suffered.

**Count II: Violation of the Equal Protection Clause of the Fourteenth Amendment (42 U.S.C. § 1983)**

42. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

43. The Equal Protection Clause of the Fourteenth Amendment guarantees that no person shall be denied the equal protection of the laws. This provision requires that all individuals be treated equally by state actors and prohibits discrimination based on impermissible classifications, including race and gender.

44. Cameron Wright, a white, male student, was entitled to equal treatment under the law and within the policies and disciplinary procedures of Pattonville High School and the Pattonville School District.

45. Defendants, acting under color of state law, treated Cameron differently from similarly situated students based on his race (white) and gender (male).

46. Upon information and belief, Defendants have engaged in a pattern of disciplining white and male students more harshly than students of other races and genders for comparable or lesser infractions. In this instance, Cameron was subjected to excessive and unjustified disciplinary actions that were disproportionate to the evidence and the nature of the allegations against him.

47. The discriminatory treatment included:

    a. Arbitrarily accusing Cameron of creating threatening graffiti messages without direct evidence, based solely on circumstantial assumptions and inconclusive handwriting analysis.

    b. Imposing a 10-day suspension on Cameron and recommending an extended suspension of 180 days or expulsion, despite the lack of credible evidence linking him to the graffiti incident.

    c. Failing to provide Cameron with any meaningful opportunity to contest the allegations or present his case while subjecting him to harsher disciplinary processes and penalties than those imposed on similarly situated students of different races and genders.

48. Defendants' disparate treatment of Cameron was motivated by impermissible considerations of race and gender. Other non-white or female students in similar situations received more lenient treatment or were afforded additional opportunities to contest allegations against them.

49. This discriminatory treatment resulted in significant harm to Cameron, including but not limited to:

    a. Damage to his educational opportunities, as he was excluded from school for an extended period of time and labeled a threat to the school community.

    b. Reputational harm caused by being unjustly branded as a perpetrator of threatening graffiti and facing false criminal charges.

    c. Emotional distress stemming from the isolation, stigma, and hostility he experienced as a result of Defendants' actions.

50. Defendants' actions lacked any rational basis or legitimate governmental interest and were instead motivated by arbitrary and discriminatory considerations.

51. Defendants, as state actors, violated Cameron's right to equal protection under the law by treating him differently based on his race and gender, thereby depriving him of his constitutional rights.
52. As a direct and proximate result of Defendants' conduct, Cameron has suffered and continues to suffer emotional, educational, and reputational harm.

**Count III: Discrimination Based on Race in Violation of Title VI of the Civil Rights Act of 1964**

31. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.
32. Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, prohibits discrimination based on race in any program or activity receiving federal financial assistance. Pattonville High School and the Pattonville School District receive federal funding and are subject to the requirements of Title VI.
33. Cameron Wright, a white student, was entitled to equal access to educational opportunities without discrimination on the basis of his race.
34. Defendants discriminated against Cameron on the basis of his race by:
    a. Arbitrarily accusing him of creating threatening graffiti messages without credible evidence.
    b. Subjecting him to more severe disciplinary actions, including a 10-day suspension, a recommendation for a 180-day suspension or expulsion, and criminal charges, than similarly situated non-white students in comparable circumstances.
    c. Failing to afford him the same level of procedural protections, support, or impartiality provided to students of other races in disciplinary investigations and proceedings.
35. Upon information and belief, Defendants exhibited a pattern of treating white students more harshly than students of other racial backgrounds in disciplinary matters, demonstrating a clear racial bias in the enforcement of the school's code of conduct.
36. Defendants relied on inconclusive handwriting comparisons and video footage that failed to directly implicate Cameron, yet they escalated the disciplinary process based on unfounded assumptions. This overreach was motivated, in part, by racial bias against Cameron.

37. Defendants' discriminatory actions included:
    a. Falsely branding Cameron as a threat to the school community.
    b. Orchestrating his arrest and prosecution for felony terrorism without sufficient evidence, thereby subjecting him to public humiliation and emotional trauma.
    c. Creating a hostile educational environment that isolated Cameron, deprived him of his right to a fair disciplinary process, and denied him access to a safe and supportive school setting.
38. As a result of Defendants' race-based discrimination, Cameron experienced significant harm, including but not limited to:
    a. Emotional distress, including anxiety, humiliation, and feelings of isolation.
    b. Academic setbacks caused by his suspension and the disruption to his education.
    c. Reputational harm stemming from the false accusations and criminal charges brought against him.
    d. A lasting stigma that negatively affects his educational and career opportunities.
39. Defendants' actions were intentional, reckless, and in violation of Title VI, which prohibits racial discrimination in federally funded programs and activities.
40. As a direct and proximate result of Defendants' discriminatory conduct, Cameron has suffered and continues to suffer damages, including emotional, educational, and reputational harm.

**Count IV: Discrimination Based on Gender in Violation of Title IX of the Education Amendments of 1972**

41. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.
42. Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), prohibits discrimination on the basis of sex in any education program or activity receiving federal financial assistance. Pattonville High School and the Pattonville School District receive federal funding and are subject to the requirements of Title IX.
43. Cameron Wright, as a male student enrolled in Pattonville High School, was entitled to equal treatment and protection under the school's policies and disciplinary procedures, without discrimination on the basis of his gender.

44. Defendants engaged in gender-based discrimination by subjecting Cameron to more severe disciplinary treatment and less procedural fairness than female students in similar or comparable circumstances.

45. Upon information and belief, Defendants' disciplinary practices have exhibited a pattern of treating male students more harshly than female students in cases involving similar allegations, and they failed to provide Cameron the same protections and opportunities for defense afforded to female students.

46. Specific examples of gender-based discrimination by Defendants include, but are not limited to:

    a. Presuming Cameron's guilt in the absence of direct evidence, while granting female students in similar disciplinary situations the presumption of innocence or a more thorough review of the evidence.

    b. Failing to provide Cameron with a meaningful opportunity to contest the allegations or present evidence in his defense, whereas female students accused of misconduct were afforded more comprehensive due process protections.

    c. Escalating the disciplinary actions against Cameron, including recommending a 180-day suspension or expulsion, without conducting a thorough investigation, whereas female students accused of similar or comparable offenses received less severe punishments or were afforded additional procedural safeguards.

47. Defendants' actions reflect a gender-based bias that deprived Cameron of equal access to educational opportunities and subjected him to harsher treatment because he is male.

48. As a result of Defendants' gender-based discrimination, Cameron experienced significant harm, including but not limited to:

    a. Emotional distress, including anxiety, humiliation, and feelings of isolation.

    b. Academic setbacks caused by his suspension and the disruption to his education.

    c. Reputational harm, including being falsely labeled as a perpetrator of threatening graffiti.

    d. A hostile educational environment in which he was treated as a threat to the community and ostracized from his peers and the school community.

49. Defendants' actions were intentional, deliberate, and in violation of Cameron's rights under Title IX, which prohibits discrimination on the basis of sex in education programs receiving federal funding.
50. As a direct and proximate result of Defendants' gender-based discrimination, Cameron suffered and continues to suffer educational, emotional, and reputational harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Declare that Defendants' actions violated Cameron's rights under the Fourteenth Amendment's Due Process and Equal Protection Clauses, as well as under Title VI and Title IX.
2. Order Defendants to expunge Cameron's record of all terrorism-related accusations and restore his standing for educational advancement.
3. Issue an injunction requiring Defendants to revise disciplinary policies to ensure compliance with due process and nondiscriminatory enforcement.
4. Award compensatory damages to Plaintiff for the educational, emotional, and psychological harm Cameron suffered.
5. Grant any other relief deemed just and proper by the Court.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

LENTO LAW GROUP, PC

BY: */s/ Antranik Boyadzhyan*
Antranik "Andy Boyadzhyan
3000 Atrium – Ste. 200
Mount Laurel, New Jersey 08054
(856) 652-2000

**CERTIFICATION and CLOSING**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information and belief that this complaint (10 is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or b y a nonfrivolous argument for extending, modifying or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerks Office with any changes to my address where case related papers maybe be served.  I understand that my failure to keep a current address on file with the Clerks Office may result in the dismissal of my case.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this     day of                              , 2025
\
Signature of Plaintiff

_____