**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NIKKI DRIY, individually, and<br>CAMERON WRIGHT, individually,<br><br>Plaintiffs,<br><br>v.<br><br>PATTONVILLE HIGH SCHOOL,<br>PATTONVILLE SCHOOL DISTRICT, et al.<br><br>Defendants. | ) | Case No.: 4:25-cv-00536-MAL |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

COME NOW Defendants Pattonville High School, Pattonville School District ("the District"), Teisha Ashford, Barry Nelson, Tim Pecoraro, Jon Fitzgerald, Gene Grimshaw, Andre Redden, Mary Kay Campbell, Lisa Kickbusch, Brian Gray, Jan Schweiss and Rená Simmons (hereinafter collectively "the Defendants"), by and through their attorneys, TUETH KEENEY COOPER MOHAN & JACKSTADT, P.C, and pursuant to Fed. R. Civ. P. 56, hereby submit their Memorandum of Law in Support of their Motion for Summary Judgment.

## INTRODUCTION AND BACKGROUND

On the morning of March 6, 2023, at approximately 8:00 a.m., Pattonville High School ("School") administrators were alerted to a message written on a wall in one of the School's boys' bathrooms. SUMF ¶ 9. The message – written lightly in pencil – read: **"I'm gonna shoot the school up on Monday."** SUMF ¶ 9. Due to the concerning and violent nature of the message, and in hopes of preventing yet another school shooting in our country, the School's administrators immediately began investigating the situation. SUMF ¶ 10 . Within approximately 30 minutes, the School's administrators unfortunately found a similar message in

another boys' bathroom. SUMF ¶ 11. Due to the location, the wording, and the handwriting of both messages, the School's administrators determined that the message must have been written by the same individual. SUMF ¶ 12. These messages prompted the School to enter a Level 1 lockdown and eventually all the students were sent home early for their safety. SUMF ¶ 13.

Shortly after students were sent home, School administrators reviewed camera footage from outside both School bathrooms and identified Plaintiff Cameron Wright ("Cameron"), a then-sophomore student at the School, as the only student who went into both bathrooms. SUMF ¶¶ 8, 14. After identifying Cameron as the only student who had been in both restrooms, School administrators requested a sample of Cameron's handwriting from his history teacher, Mr. David Gross. SUMF ¶¶ 14-15. Mr. Gross provided the District with a sample of Cameron's handwriting and a statement. SUMF ¶¶ 15-16. In his statement, Mr. Gross noted that Cameron had been agitated and constantly on his phone during the School's lockdown on March 6th, despite being redirected multiple times. SUMF ¶ 16. In his statement, Mr. Gross also reported that this type of behavior was out-of-character for Cameron. SUMF ¶ 16.

Ultimately, the District and the Maryland Heights Police Department reviewed Cameron's handwriting sample and determined it to be consistent with the threats written on the walls of the two School bathrooms. SUMF ¶¶ 17-19. Shortly thereafter, the District was notified that Cameron had been arrested and criminally charged with Terrorism (F) – Making a Terroristic Threat. SUMF ¶¶ 19-20. At the time of Cameron's arrest, Plaintiffs were aware that Cameron was being accused of making a threat to conduct a school shooting, that there was video footage of him going into both bathrooms where the threats were found, and that his handwriting was believed to match the threats written on the bathroom walls. SUMF ¶¶ 21-23.

That same day – March 6, 2023 – Mr. Jared Beucke, Pattonville High School Assistant Principal, called Cameron's mother, Plaintiff Nikki Driy ("Ms. Driy") and explained that he wanted to speak with her about the day's events and that Cameron's name had come up as possibly being involved with making a threat against the District. SUMF ¶ 24. Mr. Beucke then arranged for Ms. Driy to bring Cameron to school on March 7, 2023 to discuss the allegations and his involvement with the threats. SUMF ¶ 24. On March 7, 2023, Ms. Driy sent Mr. Beucke a text message stating that she did not believe Cameron was responsible for making the threats and stated, "I checked his backpack when they arrested him, nothing but pencils." As mentioned above, the threats were written in pencil. SUMF ¶¶ 9, 11, 25.

Later in the morning on March 7, 2023, Mr. Beucke continued his investigation by speaking with and obtaining written statements from various District students. SUMF ¶ 26. Additionally, in the afternoon on March 7, 2023, a District student submitted a Quicktip alert to the School. SUMF ¶ 27. Mr. Beucke interviewed the student who provided the Quicktip. SUMF ¶ 27. During the interview, this student provided Mr. Beucke with SnapChat messages between Cameron and other District students. SUMF ¶ 28. In the messages, Cameron stated, "Aye there abt to be hella cops at school nd they might take y'all in to ask questions so if y'all bring shi tmr don't get caught." SUMF ¶ 29. He also posted, "They got my laptop too wit all my messages" and "Nd don't say shi I'm so fr". SUMF ¶ 29. In response, another student stated on SnapChat, "onm everyone js act clueless asf" and "don't say no names or anything". Then another student posted, "Ong deni deni deni every thing the ask". SUMF ¶ 29. Ultimately, during the investigation, Mr. Beucke obtained ten (10) statements from other District students. SUMF ¶ 26.

On March 7, 2023 – the day after the threats were found – Cameron, his mother, and his stepfather arrived at the District with their attorney. SUMF ¶ 30. Due to the presence of legal

counsel, Mr. Beucke explained he could not discuss the investigation without also having the District's legal counsel present. SUMF ¶ 31. That said, Mr. Beucke provided Cameron with an opportunity to provide a written statement to explain his response to the allegations. SUMF ¶ 32. Mr. Beucke received Cameron's written statement addressing the allegations via email on March 8, 2023, at 7:01 a.m. SUMF ¶ 33. In his statement, Cameron denied being the individual who wrote the message on the bathroom stall and stated that he had only been in the bathroom to blow his nose. SUMF ¶ 33.

Following his investigation of the incident and receiving Cameron's statement, Mr. Beucke determined – using the preponderance of the evidence standard – that Cameron was responsible for writing the two threats on the School's bathroom walls and he suspended Cameron for ten (10) days with a referral to a disciplinary hearing to determine if Cameron should receive additional days of suspension for the offense of Level III, 13: Threats to Bring Weapons or Harm to Individuals or School Property. SUMF ¶ 34. Plaintiffs were notified on or about March 8th, 2023, that Cameron would be suspended from March 8th through March 29th, 2023. SUMF ¶ 35. On March 9, 2023, Ms. Teisha Ashford, High School Principal, notified Ms. Driy that she recommended to Dr. Barry Nelson, the District's Superintendent of Schools, that Cameron be suspended for 180 days for Level III, 13: Threats to Bring Weapons or Harm to Individuals or School Property. SUMF ¶ 36.

On March 10, 2023, Mr. Beucke sent a letter to Ms. Driy informing her that Cameron had been suspended for ten (10) days, that the suspension may be extended by the Superintendent, and enclosed a copy of the School's discipline policy. SUMF ¶ 37. That same day, Dr. Nelson sent a letter to Ms. Driy informing her that he may extend Cameron's ten (10) day suspension for up to 180 school days and/or recommend his expulsion due to his violation of the Pattonville

School District's Behavior Guide. SUMF ¶ 38. Dr. Nelson's letter also stated that additional days of suspension and/or a recommendation of expulsion would be determined at a student discipline hearing on Monday, March 27th at 1:00 p.m., which would be conducted by the District's Assistant Superintendent of Student Services, Dr. Tori Cain. SUMF ¶ 39. Prior to the disciplinary hearing, Cameron and/or his mother, Ms. Driy, were provided with all the District's evidence support their assertion that Cameron was responsible for writing the threats. SUMF ¶ 40.

On March 27, 2023, Dr. Cain conducted a disciplinary hearing to determine if Cameron's discipline should be extended. SUMF ¶ 41. Cameron, his mother, his stepfather, and **the family's attorney** were present for the disciplinary hearing. SUMF ¶ 42. At the hearing, the family's attorney spoke and presented evidence on Cameron's behalf, including a report from a handwriting expert and results from a polygraph test. SUMF ¶ 43. In addition, Ms. Driy spoke on Cameron's behalf at the hearing. SUMF ¶ 43. While Cameron did not speak at the hearing, he was given the opportunity to do so. SUMF ¶ 44. Ultimately, following the hearing, **the District declined to extend Cameron's suspension past ten (10) days**, and Cameron was allowed to return to school on March 30, 2023. SUMF ¶¶ 45-46. Cameron graduated from the District – on time – in May of 2025. SUMF ¶ 48.

On May 14, 2025, Cameron and his mother, Ms. Driy, filed the present lawsuit containing four counts against all the Defendants. *See* Doc. 1. In their Complaint, Plaintiffs allege that Defendants violated Cameron's due process rights under the Fourteenth Amendment even though Plaintiffs admit that they had notice and an opportunity to be heard prior to the District's implementation of Cameron's suspension. SUMF ¶¶ 21-25, 30, 32-33, 35-44. Additionally, Plaintiffs allege that Defendants violated the Equal Protection Clause of the Fourteenth Amendment because Defendants treated Cameron differently from similarly situated students

based on his race (white) and gender (male); however, Plaintiffs have no evidence to support their allegation. SUMF ¶¶ 49-51. While Plaintiffs also allege that Defendants discriminated against Cameron based on his race (white) in violation of Title VI of the Civil Rights Act of 1964, again, Plaintiffs have no evidence to support their allegation. SUMF ¶¶ 49-51. Finally, Plaintiffs allege that Defendants discriminated against Cameron based on his gender in violation of Title IX of the Education Amendments of 1972, but they have no evidence to support this assertion either. SUMF ¶¶ 49-51. Because the undisputed facts reveal that the District provided Cameron with proper due process relating to his suspension, and Plaintiffs have no evidence to support any of their other claims, Defendants are entitled to judgment as a matter of law.

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56(a), a court shall grant summary judgment if "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." In responding to a motion for summary judgment, a plaintiff must set forth specific facts showing there is sufficient evidence to allow a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Further, a plaintiff must do more than simply show there exists some doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Self-serving, conclusory statements, standing alone, are insufficient to defeat a well-supported motion for summary judgment." *Stone v. McGraw-Hill Global Educ. Holdings, LLC*, 126 F. Supp. 3d 1077, 1084 (E.D. Mo. 2015).

## ARGUMENT

**I. Plaintiffs have not established, nor can they establish, a violation of the Due Process Clause of the Fourteenth Amendment.**

**A. Cameron received all of the procedural due process he was entitled to for a ten (10) day school suspension when he received notice and an opportunity to be heard.**

While Defendants do not dispute that a student has a property interest in his education, a school district is only required to provide students with "notice and an opportunity to be heard" prior to being suspended for ten (10) days or less. *Pl. A v. Park Hill Sch. Dist.*, 97 F.4th 586, 590 (8th Cir. 2024). "Specifically, the student must be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." *Id.* (internal quotations omitted); *see also Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1124 (8th Cir. 2005) (holding that the only procedural due process required for suspensions of students for ten (10) days or less is that they be "given the opportunity to present [their] side of the story").

This case is nearly identical to the facts of *Pl. A v. Park Hill Sch. Dist* – except in *Park Hill*, the student plaintiff was subjected to a suspension longer than ten (10) days (which Cameron was not). SUMF ¶ 46. In *Park Hill*, a ninth-grade boy created an online petition calling for the return of slavery and was subsequently expelled from the school district. *Park Hill*, 97 F. 4th at 588-89. In that case, the student plaintiff and his parents were notified about the initial ten (10) day suspension; they were notified about the principal's recommendation of extended-term suspension or expulsion; they were notified about upcoming disciplinary conferences; and they were given a written notice of charges ten (10) days before the disciplinary conferences. *Id.* at 591. Additionally, the student plaintiff had the opportunity to recount his version of the events at

his initial meeting with the assistant principal; was provided with explanations of why the behaviors resulted in specific violations; provided a written statement to school administration about his involvement in the incident; and had opportunities to respond to the decisionmakers during the school's disciplinary conferences. *Id.* Based on these facts, the Court found that the student plaintiff's procedural due process claim – for a long-term suspension/expulsion – failed because he had fair notice and a meaningful opportunity to present their case in the school disciplinary proceedings. *Id.* at 591.

In this case, Cameron was *not expelled* nor was he subjected to a long-term suspension. SUMF ¶ 46. While students are entitled to less due process for short-term suspension, as discussed in *Park Hill*, the District provided Cameron with nearly identical procedural due process as the student plaintiff in *Park Hill*, where the Court found the due process provided by the school district sufficient for an expulsion. First, Cameron and his mother, Ms. Driy, were sufficiently notified of what Cameron was accused of doing and the basis for the accusation. SUMF ¶¶ 21-25, 30, 35-42. During their depositions, Cameron and his mother both admitted to knowing that Cameron had been accused of writing threats on the walls in two of the School's bathrooms by the afternoon of March 6, 2023, the day the incident occurred. SUMF ¶¶ 21-23. Moreover, Mr. Beucke, the School's Assistant Principal, contacted Ms. Driy on the evening of March 6th to speak with her about the incident. SUMF ¶ 24. Plaintiffs were further notified of the ten (10) day suspension; they were notified about the Principal's recommendation for an extension of the suspension or expulsion; they were notified about the upcoming disciplinary conference; and they were given all of the District's evidence to support their recommendation prior to the disciplinary hearing. SUMF ¶¶ 35-42.

Additionally, Cameron received multiple opportunities to explain his version of the facts. The day after the incident, Cameron and Ms. Driy admit that they met with School administrators on March 7th to discuss the incident. SUMF ¶ 30. While Mr. Beucke declined to speak to Cameron and Ms. Driy's attorney without the presence of the District's attorney, Cameron admits that on the morning of March 8th, he prepared and submitted written statement to the District explaining his version of events (that he was in the bathroom to blow his nose and did not write a threat). SUMF ¶¶ 31-33. Moreover, the District conducted a disciplinary hearing on March 27, 2023. SUMF ¶ 41. During the hearing, Cameron, his mother, father, stepfather, and their attorney were present and presented evidence to attempt to refute the District's allegations, including a report from a handwriting expert and results from a polygraph test. SUMF ¶¶ 42-43. While Cameron declined to speak at the hearing, he was given the opportunity to do so. SUMF ¶ 44.

Here, just like in *Park Hill*, Plaintiffs' procedural due process claim fails because Cameron had fair notice and a meaningful opportunity to be heard. *See Pl. A v. Park Hill Sch. Dist.*, 97 F.4th 586, 590 (8th Cir. 2024)*; see also Keefe v. Adams*, 840 F.3d 523, 535 (8th Cir. 2016) (concluding school complied with due process requirements when a school official "met with [the student], informed him that there were concerns regarding his Facebook, read from the posts of greatest concern, explained that his posts implicated the professionalism and professional boundary requirements of the [program], and gave him an opportunity to respond"); *see also London v. Dirs. of DeWitt Pub. Schs.*, 194 F.3d 873, 874, 877 (8th Cir. 1999) (holding middle school student's expulsion not a due process violation where student's mother was informed of grounds upon which expulsion recommendation was based and where student was given hearing where he was represented by counsel who had full opportunity to examine and

cross-examine witnesses). Accordingly, Defendants are entitled to judgment as a matter of law on Plaintiffs' procedural due process claim.

**B. <u>To the extent Plaintiffs are alleging a violation of Cameron's substantive due process rights, their claim fails because Cameron's ten (10) day suspension for writing threats to "shoot up the school" does not "shock the contemporary conscience."</u>**

While not explicitly alleged in their Complaint, to the extent Plaintiffs are attempting to assert a substantive due process claim against Defendants, that fails as well. "To prove a violation of substantive due process rights, [a plaintiff] must show a government violation of a fundamental constitutional right so egregious that it shocks the contemporary conscience." *Park Hill*, 97 F.4th at 591. "Because the right to a public education is a property interest, and not a fundamental right, *Goss*, 419 U.S. at 574, 95 S.Ct. 729, Plaintiffs must show that there was no rational basis for the [school's] decision or that the decision was motivated by bad faith or ill will." *Id.* (internal quotation omitted).

Courts, however, have consistently held that "suspensions and expulsions are routine disciplinary actions that generally do not offend notions of fairness or human dignity." *Id.* (internal citations omitted). In *Park Hill,* the Court noted that there was a rational basis for the school district's disciplinary decision to expel a student for creating an online petition calling for the return of slavery when the underlying conduct caused disruption in the school environment. *Id*. at 592.

Here, Cameron was clearly not deprived of substantive due process. Writing threats to conduct a school shooting is – without question – extremely serious and caused a significant, actual disruption at school. The entire School went into a Level 1 lockdown and ultimately, the School had to send students home for the day for their safety. SUMF ¶ 13. Given the seriousness of the conduct at issue, a ten (10) day suspension is notably conservative and certainly cannot be

said to "shock the contemporary conscience." As a result, to the extent Plaintiffs are attempting to assert a substantive due process claim, that claim fails, and Defendants are entitled to judgment as a matter of law.

## II. Plaintiffs have not established, and cannot establish, a claim for violating the Equal Protection Clause under the Fourteenth Amendment.

Plaintiffs likewise cannot establish any violation of the Equal Protection Clause. Under the Equal Protection Clause, the government is generally required to treat similarly situated people alike. *Park Hill*, 97 F.4th at 592. "[T]he first step in an equal protection case is determining whether the plaintiff has demonstrated that [he] was treated differently than [comparators] who were similarly situated to [him]." Id. Moreover, "[p]laintiffs and their comparators must be similarly situated in all relevant respects." *Id.* (internal quotation omitted).

In this case, Plaintiffs have not established (and they cannot establish) that Cameron was treated differently than any other student who was accused of committing a similar offense. In their Complaint, Plaintiffs allege that Defendants treated Cameron differently from similarly situated students based on his race (white) and gender (male). Doc. 1, at ¶ 45. They further allege that Defendants engaged in a pattern of disciplining white and male students more harshly than students of other races and genders for comparable or lesser infractions. Doc. 1, at ¶ 46.

Both Cameron and Ms. Driy testified, however, that they have no knowledge of how students accused of similar misconduct were treated. SUMF ¶ 59. They also have produced no evidence that even suggests that Cameron was treated more harshly than any similarly situated student. Additionally, Plaintiffs have not and cannot present any evidence that any of Defendants' actions were motivated by Cameron's race (white) or gender (male). While Cameron testified that he felt like he was being discriminated against because of his race because of the "vibe that [he] was getting," **a vibe is not sufficient to defeat summary judgment**. SUMF ¶ 51. *See Park*

*Hill*, 97 F.4th at 592 (holding that a plaintiff's "mere suspicion is not sufficient to defeat summary judgment"); *see also Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) ("Mere allegations, unsupported by . . . evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."). Because Plaintiffs have no evidence supporting their contention that Cameron was treated differently from similarly situated students based on his race (white) or gender (male), Defendants are entitled to judgment as a matter of law on Plaintiffs claim under the Equal Protection Clause.

**III. Plaintiffs have not established, nor can they establish, a claim of race discrimination under Title VI.**

For the same reasons as discussed above, Plaintiffs claim race discrimination under Title VI fails. To establish a prima facie case of race discrimination under Title VI, Plaintiffs must demonstrate that Cameron's race was the "motive for the discriminatory conduct." 42 U.S.C.A. § 2000d; *see also Thompson by and through Buckhanon v. Bd. of Spec. Sch. Dist. No. 1 (Minneapolis)*, 144 F.3d 574, 581 (8th Cir. 1998).

As explained above, Plaintiffs have presented no evidence that the District's actions were motivated by Cameron's race. SUMF ¶¶ 50-52. In fact, both Plaintiffs admitted that they thought the reason Cameron received a suspension was because the District believed that he wrote the threats on the bathroom walls. SUMF ¶ 49. *See Thompson by and through Buckhanon*, 144 F.3d at 581 (finding that student plaintiff's race discrimination claim under Title VI failed when the evidence supported that the student's disciplinary suspensions were motivated by his own conduct, and he failed to present evidence that race was a motivating factor in his suspensions). Because Plaintiffs have no evidence supporting their contention that Cameron's suspension was motivated by his race, Defendants are entitled to judgment as a matter of law on Plaintiffs claim under Title VI.

**IV. Plaintiffs have not and cannot establish a claim of sex discrimination under Title IX.**

Similarly, Plaintiffs cannot establish a claim of sex discrimination in violation of Title IX of the Education Amendments of 1972. In order for a school to be liable under Title IX, "it must be (1) deliberately indifferent (2) to known acts of discrimination (3) that occur under its control." *Plamp v. Mitchell Sch. Dist. No. 17-2*, 565 F.3d 450, 456 (8th Cir. 2009).

Plaintiffs have not presented any evidence to establish that the District was deliberately indifferent to known acts of sex discrimination. Plaintiffs have not and cannot provide any evidence to suggest Cameron's sex or gender had anything to do with his disciplinary consequences. SUMF ¶¶ 49-52. Plaintiffs also have no evidence to demonstrate that a similarly situated female was treated differently. SUMF ¶ 50. For these reasons, Plaintiffs claim of sex discrimination under Title IX fails, and Defendants are entitled to judgment as a matter of law.

**V. Plaintiffs have not alleged any facts or presented any evidence to support their allegations against several of the individual Defendants.**

In their Complaint, Plaintiffs named as an individual Defendant Dr. Tim Pecoraro, the former Superintendent of Schools for the District, who was not employed by the District at the time of the events alleged in Plaintiffs' Complaint. Doc. 1; *see also* SUMF ¶ 53. Plaintiffs also named as individual Defendants Dr. Jon Fitzgerald, an assistant principal of Pattonville High School, Mr. Jeff (sic) Grimshaw (Gene Grimshaw is an Associate Principal of Pattonville High School), Mr. Andre Redden, an assistant principal of Pattonville High School, Ms. Mary Kay Campbell, a member of the District's Board of Education, Ms. Lisa Kickbusch, a member of the District's Board of Education, Dr. Brian Gray, a member of the District's Board of Education, Ms. Jan Schweiss, a member of the District's Board of Education, and Ms. Rená Simmons, a member of the District's Board of Education. Doc. 1; *see also* SUMF ¶¶ 54-55.

Plaintiffs, however, do not allege any facts nor have they presented any evidence to support any claims against these individually named Defendants. Plaintiffs have not alleged and have not presented any evidence that Dr. Pecoraro, Dr. Fitzgerald, Mr. Grimshaw, or Mr. Redden were involved in the District's decision to suspend Cameron for ten (10) days or that they engaged in any discriminatory conduct to support any of Plaintiffs' claims. Doc. 1. Additionally, Plaintiffs have not alleged and have not presented any evidence that Cameron's disciplinary issue reached the level of the District's Board of Education, or that any District Board member, including Ms. Campbell, Ms. Kickbusch, Dr. Gray, Ms. Schweiss, or Ms. Simmons had any involvement in this matter or discriminated against Cameron in any way. Doc. 1. For these reasons, as well as the reasons discussed above, Dr. Pecoraro, Dr. Fitzgerald, Mr. Grimshaw, Mr. Redden, Ms. Campbell, Ms. Kickbusch, Dr. Gray, Ms. Schweiss, and Ms. Simmons should be dismissed from this case.

**VI. Plaintiff Nikki Driy does not allege any individual claims, so she should be dismissed as a Plaintiff from this lawsuit.**

The caption of Plaintiffs' Complaint asserts that Plaintiff Nikki Driy is bringing claims in her individual capacity; however, Plaintiffs' Complaint asserts no claims that Ms. Driy had any legally protected rights violated, that Ms. Driy was damaged, or that Ms. Driy is seeking any relief from this Court. Doc. 1. Because Plaintiffs' Complaint asserts no claims on behalf of Ms. Driy, Ms. Driy should be dismissed as a Plaintiff from this matter.

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court enter judgment in favor of Defendants and against Plaintiff on all claims and counts, award Defendants their costs incurred herein, and for such other and further relief as the Court deems appropriate.

Respectfully submitted,

TUETH KEENEY COOPER MOHAN & JACKSTADT, P.C.

By: _/s/ Mandi D. Moutray_
Michelle H. Basi, #54943MO
Mandi D. Moutray, #66096MO
Sarah P. McConnell, #74216MO
34 N. Meramec Avenue, Suite 600
St. Louis, MO 63105
(314) 880-3600
mbasi@tuethkeeney.com
mmoutray@tuethkeeney.com
smcconnell@tuethkeeney.com

***Attorneys for Defendants***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies on this 7th day of May 2026, the foregoing was served by the Court's electronic court filing notification system upon all counsel of record.

_/s/ Mandi D. Moutray_