**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NIKKI DRIY, individually and on behalf of her minor son, CAMERON WRIGHT,** | ) | |
| ***Plaintiffs*,** | ) | |
| **vs.** | ) | **Case No.: 4:25-cv-00536-MAL** |
| **PATTONVILLE HIGH SCHOOL, PATTONVILLE SCHOOL DISTRICT, et al.** | ) | |
| ***Defendants*.** | ) | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants' motion rests on the premise that their investigation was thorough, their process was fair, and their conclusions were inevitable. The record demonstrates otherwise. The District suspended Cameron Wright before hearing his side of the story, relied on surveillance footage from the wrong day, treated a lay handwriting comparison as conclusive, and escalated discipline to a potential expulsion before reviewing any exculpatory evidence. These are not undisputed facts; they are precisely the kinds of factual conflicts that preclude summary judgment.

## I. INTRODUCTION AND BACKGROUND

This case arises from a series of rushed, incomplete, and procedurally deficient actions by Pattonville High School administrators who, within hours of discovering threatening graffiti on March 6, 2023, identified Cameron Wright as the culprit based on speculation, assumptions, and surveillance footage from the wrong day. Before speaking to Cameron, before reviewing exculpatory information, and before conducting a fair investigation, the District suspended Cameron, referred him for a 180-day suspension or expulsion, and triggered a criminal arrest that

resulted in Cameron being handcuffed, booked, fingerprinted, and charged with felony terrorism, all on the same day.

The District now claims that Cameron "received all the process he was due," but the record, including Defendants' own exhibits, shows the opposite. Cameron was suspended before he was given any meaningful opportunity to be heard. The District escalated discipline to a 180-day suspension before reviewing Cameron's written statement. Administrators relied on a handwriting comparison performed by a history teacher with no expertise, surveillance footage from March 3 rather than March 6, and a series of assumptions that ignored obvious alternative explanations. And at every stage, the District treated Cameron as guilty first and heard later.

The District's own evidence confirms this. Cameron testified that when police arrived at his home, he "had no idea what they were talking about" and immediately denied the accusation. (Wright Dep. 41:13–22). Assistant Principal Beucke admits he received Cameron's written statement at 7:01 a.m. on March 8, yet the suspension letter had already been prepared and issued that same day. (Beucke Aff. ¶¶ 17–18; PSD000017). Principal Ashford recommended a 180-day suspension on March 9, before any hearing and before reviewing the polygraph or the handwriting expert report later presented at the hearing. (PSD000016).

The District's Discipline Packet further shows that the only surveillance footage depicting Cameron entering both bathrooms was from March 3, three days before the threats were discovered. (PSD000019). No footage shows Cameron entering both bathrooms on March 6. The District also disregarded multiple exculpatory student statements, including Student F's statement that Cameron entered the bathroom only to blow his nose (PSD000028), Student A's statement that Cameron "did not write on the walls" (PSD000023), and Student G's statement that Cameron denied writing the threat (PSD000028). When Cameron finally appeared at the March 27 hearing,

both he and Plaintiff Nikki Driy testified that he was repeatedly cut off and not allowed to fully explain himself. (Wright Dep. 52:25–53:3; 55:21–23; Driy Dep. 32:1–7).

The District's own witnesses further admitted that they never considered alternative suspects. Assistant Principal Beucke testified that the District simply assumed the same person wrote both messages and assumed that person was Cameron because he entered both bathrooms on March 3. (PSD000019). No evidence supports this assumption.

These facts, drawn entirely from Defendants' own exhibits, create multiple genuine disputes of material fact that preclude summary judgment. Under *Goss v. Lopez*, 419 U.S. 565 (1975), a student facing suspension is entitled to notice of the charges and a meaningful opportunity to present his side before discipline is imposed. Cameron received neither. Under *Park Hill*, *Keefe*, and *Jennings*, due process requires more than a perfunctory meeting after the punishment has already been decided. And under *Thompson* and *Plamp*, discrimination claims cannot be dismissed where comparator information is exclusively in the defendant's control, as it is here.

Finally, Defendants' attempt to dismiss the individual defendants and Plaintiff Nikki Driy is premature and unsupported. The Complaint alleges direct involvement, ratification, and personal participation by each named defendant, and Ms. Driy suffered independent harms, financial, emotional, and reputational, as a result of Defendants' actions.

When the record is viewed in the light most favorable to Plaintiffs, as Rule 56 requires, summary judgment must be denied.

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when the movant demonstrates that no genuine dispute of material fact exists and that it is entitled to judgment as a matter of law under Rule 56.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In evaluating such a motion, the Court must view the evidence in the light most favorable to the non-moving party, draw all reasonable inferences in that party's favor, and refrain from weighing credibility or resolving factual disputes. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986). The question is not whether the Court believes the non-movant's evidence, but whether a reasonable jury could.

A dispute is "genuine" when the evidence is such that a jury could return a verdict for the non-moving party, and it is "material" when it might affect the outcome under governing law. Summary judgment must therefore be denied where the record contains competing accounts, conflicting testimony, or evidence permitting multiple reasonable interpretations.

Where, as here, the moving party relies heavily on its own interpretation of events, its own credibility assessments, and its own characterization of disputed facts, summary judgment is especially inappropriate. The Court may not credit Defendants' version of events over Plaintiffs', nor may it resolve the numerous factual conflicts arising from the testimony of Cameron Wright, Nikki Driy, and the District's own witnesses and documents, including the discipline packet, deposition testimony, and affidavits submitted by Defendants themselves.

## III. ARGUMENT

The record contains multiple genuine disputes of material fact that preclude summary judgment on each of Plaintiffs' claims. Because these disputes go to the core of what occurred, why it occurred, and how the District reached its disciplinary decisions, they must be resolved by a jury rather than on summary judgment.

**A. Plaintiffs Presented Sufficient Evidence of a Procedural Due Process Violation**

Defendants' motion rests on the premise that Cameron "received all the process he was due." The record demonstrates otherwise. A reasonable jury could conclude that the District suspended Cameron first, later justified the decision, and never afforded him the basic protections required under *Goss v. Lopez*, 419 U.S. 565 (1975).

The undisputed timeline shows that Cameron was arrested on March 6, 2023, without ever having been contacted by the District, questioned by school officials, or informed of any allegations. His mother, Plaintiff Nikki Driy, testified that the police, not the school, were the first to tell her anything about handwriting or video footage. The District did not speak to Cameron at all on March 6. Instead, it immediately treated him as the culprit, notified police, and allowed law enforcement to take him into custody before any school administrator had heard his side of the story.

When Cameron appeared at the school on March 7 with counsel, Defendants' own Statement of Facts admits that administrators refused to speak with him because counsel was present. They declined to ask questions, to hear his explanation, and to review the evidence with him. Instead, they handed him a blank form and instructed him to submit a written statement later. This is not the "informal give-and-take" required by *Goss*; it is the opposite.

The District then suspended Cameron on March 8, before receiving his written statement, reviewing his explanation, or providing him any meaningful opportunity to respond. The suspension letter (Ex. 6, PSD000017) confirms that the decision had already been made. Assistant Principal Beucke's affidavit states that he "determined" Cameron was responsible and imposed the 10-day suspension based on a "preponderance of the evidence" before any hearing occurred. That is precisely the type of pre-hearing punishment *Goss* forbids.

Defendants' reliance on *Park Hill* is misplaced. In that case, the student received multiple meetings, written charges, and opportunities to respond before discipline was imposed. Here, Cameron received none of those protections. The March 27 hearing was not to determine whether he committed the offense; it was merely to decide whether the already-imposed suspension should be extended. By then, the deprivation had already occurred.

These facts, if credited, establish a clear violation of *Goss*, which requires notice and an opportunity to be heard before a suspension is imposed. Summary judgment is therefore inappropriate.

Additionally, *Goss* requires that a student receive notice of the charges before discipline is imposed. Cameron received no such notice. He was arrested before any administrator spoke to him, suspended before being told what he was accused of, and referred for a 180-day suspension before any explanation was provided. A jury could find that the District failed to provide even the minimal notice required by the Fourteenth Amendment.

**A.1. The District's Process Was Predetermined and Constitutionally Invalid**

Even if the District had provided Cameron with nominal opportunities to respond, due process is violated where the outcome is predetermined. Courts have repeatedly held that a hearing is constitutionally meaningless when the decisionmaker has already made up their mind. The record here shows that the District drafted the suspension letter before receiving Cameron's written statement, recommended a 180-day suspension before reviewing any exculpatory evidence, and convened a March 27 hearing only after the punishment had already been imposed. A reasonable jury could conclude that the District's process was a foregone conclusion, rendering the "hearing" a sham and violating the core requirement of a neutral, open-minded decisionmaker.

**A.2. Credibility Conflicts Alone Preclude Summary Judgment**

Summary judgment is improper where the parties' accounts diverge on material facts, particularly where credibility is central. *Tolan* and *Anderso*n make clear that courts may not weigh credibility or choose between competing narratives. Here, the parties sharply dispute what Cameron said, what administrators did, what evidence existed on March 6–9, and whether exculpatory information was ignored. These credibility conflicts alone require denial of summary judgment.

**B. Plaintiffs Presented Sufficient Evidence of a Substantive Due Process Violation**

Defendants argue that Cameron's suspension cannot "shock the conscience" as a matter of law. But the question is not whether a 10-day suspension is inherently shocking; it is whether the District's conduct in reaching that decision was arbitrary, irrational, or motivated by improper considerations.

The record contains ample evidence from which a jury could reach that conclusion. The District relied on surveillance footage from March 3, not March 6, to conclude that Cameron was the only student who entered both bathrooms. The District's own incident summary admits that no footage from March 6 showed Cameron entering both restrooms. The assumption that the same person wrote both messages was never tested, corroborated, or supported by evidence, yet it became the foundation of the District's entire case.

The District also relied on a "handwriting comparison" conducted by a teacher and a police officer, neither of whom had any training in forensic handwriting analysis. Plaintiffs later obtained a handwriting analysis indicating that the District's comparison was unreliable. A jury could find that the District's reliance on such speculative evidence, while ignoring exculpatory information,

including multiple student statements confirming Cameron was in the bathroom only to blow his nose, was arbitrary and conscience-shocking.

The District escalated the matter to a potential 180-day suspension and expulsion before ever hearing Cameron's explanation. Principal Ashford's March 9 memorandum recommending a 180-day suspension was issued before Cameron's written statement was even received. Superintendent Nelson's March 10 letter threatening expulsion was issued without any independent review. A jury could find that the District's rush to impose the harshest possible discipline, without evidence and without process, was motivated by fear, public pressure, or bias, not reasoned judgment.

Under *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), conduct that is arbitrary, oppressive, or undertaken with deliberate indifference to a student's rights may violate substantive due process. The record here supports such a finding.

**B.1. District's Failure to Follow Its Own Policies Supports Both Due Process Claims**

A school district's failure to follow its own disciplinary procedures is compelling evidence of both procedural and substantive due process violations. The District's handbook requires administrators to interview the student, review relevant evidence, and consider exculpatory information before imposing discipline. None of these steps occurred here. Administrators suspended Cameron without speaking to him, relied on surveillance footage from the wrong day, and escalated discipline before reviewing his written statement or any exculpatory evidence. A jury could conclude that the District's disregard of its own mandatory procedures rendered the process constitutionally deficient and the outcome arbitrary.

**B.2. The District Ignored Clear Exculpatory Evidence**

Substantive due process is violated when officials ignore plainly exculpatory evidence. The District had multiple student statements confirming that Cameron entered the bathroom only to blow his nose, that he denied writing the threat, and that other students were present. The District also had access to handwriting analysis and polygraph results that contradicted its assumptions. Yet none of this evidence was considered before imposing discipline or escalating the matter to a 180-day suspension. A jury could find that the District's refusal to consider exculpatory evidence was arbitrary, outcome-driven, and conscience-shocking.

**C. Plaintiffs Presented Sufficient Evidence of an Equal Protection Violation**

Defendants argue that Plaintiffs cannot identify comparators. But comparator evidence is not required where the discriminatory treatment itself is evident from the record and where the relevant information is exclusively in Defendants' control.

Both Cameron and Plaintiff Nikki Driy testified that multiple other threats occurred during the same period, including threats written in the girls' bathroom the week before. Defendants' own witnesses confirmed that additional threats occurred while Cameron was suspended. Yet Defendants produced no evidence of how those students were treated, whether they were disciplined, or whether they were even investigated. The absence of comparator evidence is a product of Defendants' refusal to disclose it, not Plaintiffs' inability to identify it.

Cameron also testified that he was treated differently because he did not fit the "teacher's pet" stereotype and because of his appearance. He described being stereotyped based on his long hair and clothing. A jury could reasonably interpret this testimony as evidence of discriminatory animus based on gender-based stereotypes about which students "look like" school shooters. Courts have repeatedly recognized that gender stereotyping can support an Equal Protection claim.

Defendants' reliance on *Park Hill* is misplaced. In that case, the plaintiff offered only a "vibe." Here, the record contains more: multiple other threats, no evidence of comparable discipline, and testimony suggesting that Cameron was singled out because of his appearance and gender. At a minimum, these facts create a triable issue.

**C.1. The District's Selective Enforcement Supports an Equal Protection Claim**

Equal Protection is violated when a school selectively enforces its disciplinary rules against one student while ignoring comparable misconduct by others. The record shows that multiple threats occurred during the same period, including threats written in the girls' bathroom the week before and additional threats while Cameron was suspended. Yet Defendants produced no evidence that any other student was investigated, questioned, or disciplined. A jury could conclude that the District's decision to treat Cameron as the sole suspect, despite multiple comparable incidents, reflects selective enforcement based on impermissible considerations, including appearance, gender, or race.

**D. Plaintiffs Presented Sufficient Evidence of Race Discrimination Under Title VI**

Defendants argue that Plaintiffs cannot show racial motivation. But Title VI does not require direct evidence of racial animus; circumstantial evidence is sufficient. The record contains several such indicators.

Cameron testified that he felt he was treated differently because he was white and did not resemble the students whom administrators typically favored. Plaintiff Nikki Driy testified that community members and other students reported that the District showed favoritism toward non-white students in disciplinary matters. While Defendants may dispute the weight of this testimony, credibility determinations are for the jury, not for summary judgment.

The District's investigation was marked by tunnel vision. Administrators immediately assumed Cameron was responsible, ignored exculpatory evidence, and refused to consider alternative suspects, even though multiple threats occurred before and after Cameron's suspension. A jury could infer that the District's willingness to assume guilt without evidence was influenced by Cameron's race.

The District's refusal to disclose how other students were treated prevents Plaintiffs from identifying comparators. Under Title VI, when the defendant controls the comparator information, the absence of such evidence cannot be held against the plaintiff at summary judgment.

A reasonable jury could conclude that race was a motivating factor in the District's actions. Summary judgment must therefore be denied.

**E. Plaintiffs Presented Sufficient Evidence of Sex Discrimination Under Title IX**

Defendants argue that Plaintiffs cannot show deliberate indifference or gender-based discrimination. But the record contains evidence from which a jury could find both.

Cameron testified that he was stereotyped because he was male and because he "looked like" the type of student who would commit a school shooting. Gender-based stereotyping is actionable under Title IX. Courts have recognized that schools may violate Title IX when they discipline male students more harshly based on stereotypes about male aggression or dangerousness.

The District's investigation reflects precisely that type of stereotyping. Administrators assumed that the student who wrote a violent threat must be male. They never investigated female students, despite evidence that a similar threat had been written in the girls' bathroom the week before. They never considered that multiple students could have been involved. They never

questioned whether the March 3 footage was relevant. Instead, they focused exclusively on Cameron.

A jury could reasonably conclude that Cameron was targeted because he was male and because of gender-based assumptions about who commits school violence. That is sufficient to defeat summary judgment.

**F. Plaintiffs Presented Sufficient Evidence Against the Individual Defendants**

Defendants argue that several individual defendants must be dismissed because they were not personally involved. But the Complaint alleges that these individuals participated in, ratified, or approved the disciplinary actions at issue. The record supports those allegations.

Principal Ashford recommended a 180-day suspension before reviewing Cameron's statement. Superintendent Nelson issued a letter threatening expulsion without conducting an independent review. Assistant Superintendent Cain presided over the hearing and accepted the recommendation to uphold the suspension. These individuals were directly involved in the deprivation of Cameron's rights.

Board members were notified of the matter, copied on correspondence, and responsible for oversight of the District's disciplinary policies. Under § 1983, supervisory liability attaches where officials knowingly allow unconstitutional practices to occur. A jury could find that the Board's failure to intervene constituted ratification.

Dismissal of these defendants at summary judgment would be premature.

**G. Plaintiff Nikki Driy Has Standing and Has Asserted Cognizable Claims**

Defendants argue that Ms. Driy should be dismissed because she has no individual claims. The Complaint alleges otherwise. Ms. Driy suffered financial harm, emotional distress, reputational harm, and loss of educational opportunities for her son — all directly traceable to

Defendants' conduct. She was forced to hire counsel, pay for expert analysis, and navigate criminal proceedings initiated because of the District's actions. These independent injuries are sufficient to confer standing under Article III. Ms. Driy is a proper plaintiff, and her claims cannot be dismissed at summary judgment.

## **CONCLUSION**

When the record is viewed in the light most favorable to Plaintiffs, as Rule 56 requires, this case presents numerous genuine disputes of material fact that cannot be resolved on summary judgment. Defendants suspended Cameron Wright before providing notice of the allegations, before explaining the evidence, and before affording him any meaningful opportunity to be heard. Their own exhibits confirm that the investigation relied on surveillance footage from the wrong day, a non-expert handwriting comparison, and assumptions that ignored exculpatory student statements and alternative suspects. The March 27 hearing occurred weeks after the suspension had already been imposed and, according to both Cameron and his mother, Plaintiff Nikki Driy, did not provide a fair opportunity to speak or respond.

These disputes are not peripheral. They go to the core of what happened, why it happened, and whether the District acted lawfully. The parties' accounts diverge sharply on nearly every material point, including what evidence existed on March 6–9, whether Cameron was given notice, whether he was allowed to speak, whether exculpatory evidence was considered, and whether the outcome was predetermined. Under *Tolan* and *Anderson*, these credibility conflicts alone preclude summary judgment.

The cumulative effect of these constitutional violations further underscores why summary judgment is inappropriate. Even if any single procedural defect might be excused, the combination of predetermination, lack of notice, refusal to hear Cameron, reliance on incorrect evidence, and

disregard of exculpatory information presents a textbook case for jury resolution. A reasonable jury could conclude that the District's actions violated Cameron's procedural and substantive due process rights, that the investigation was arbitrary and outcome-driven, and that Cameron was treated differently based on impermissible stereotypes regarding his appearance, gender, or race.

The same factual disputes preclude dismissal of the individual defendants and Plaintiff Nikki Driy, who suffered independent harms as a direct result of the District's conduct. Summary judgment is an extraordinary remedy. It is not appropriate where, as here, the facts are contested, credibility is central, and the record contains ample evidence from which a jury could find in Plaintiffs' favor.

Defendants' motion should therefore be denied in its entirety.

Date: May 20, 2026

Respectfully Submitted,

**LLG NATIONAL LAW GROUP**

/s/ Lynda Sangmor

Lynda Sangmor (*Pro Hac Vice*)
MD Bar No. 0606130267
3003 N. Central Avenue, Suite 685
Phoenix, AZ 85012
Telephone: 480-745-5863
Lynda.sangmor@llgnational.com

***Attorney for Plaintiffs***

**CERTIFICATE OF COMPLIANCE & SERVICE**

I hereby certify that I signed or caused my electronic signature to be placed upon the original of the foregoing document. I further certify that on the date shown above, a copy of the foregoing instrument was sent through the Courts ECF/CM System to all counsel of record.

/s/_Lynda Sangmor__________

Lynda Sangmor